UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL L. ZABORAC, Plaintiff, | ) | |
| vs. | ) | 1:03-cv-1199-LJM-WTL |
| MUTUAL HOSPITAL SERVICES, INC., Defendant. | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross motions for summary judgment brought by plaintiff, Mr. Daniel L. Zaborac ("Zaborac") and defendant, Mutual Hospital Services, Inc. ("MHS"). Zaborac's claims are based on the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Zaborac requests that this Court reconsider its October 7, 2004, Order ("October Order") denying Zaborac's Motion for Partial Summary Judgment. MHS contends that this Court correctly found genuine questions of material fact as to whether MHS had made a bona fide error, pursuant to Section 1692k of the FDCPA. The parties have fully briefed their arguments, and the motion is now ripe for ruling.

## I. FACTUAL BACKGROUND

On June 10, 2003, MHS sent Zaborac a collection letter on a debt for medical services. Cross Aff. ¶ 15; Ex. G. On June 18, Zaborac's attorney sent MHS a letter informing MHS that Zaborac was represented by counsel, disputing the validity of the debt, and requesting verification of the debt. *Id.* ¶ 16; Ex. H. On June 25, MHS's employee Ms. Carol Crosley ("Crosley") left a telephone

message for Zaborac's attorney seeking written authorization from Zaborac, pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R. § 164.500 *et seq.* MHS sought HIPAA authorization because the verification of the debt would contain medical information. *See* Crosley Aff. ¶ 13.

On June 27, 2003, Zaborac's attorney advised Crosley by telephone that Zaborac would not provide HIPAA authorization and that MHS did not need the authorization to validate the debt. Crosley Aff. ¶¶ 13, 14; Ex. D. More than thirty days later,[1] on August 4, MHS sent a verification letter, along with an itemized bill for medical services, directly to Zaborac. Compl. Ex. C.

MHS's stated procedures for ensuring compliance with federal law included: maintaining a reference manual; requiring each employee to pass a test prior to communicating with debtors; and requiring each employee to maintain a call procedures handout. Cross Aff. ¶¶ 11-12, 14. The test included some FDCPA rules, which included the provision that alleged debtors represented by counsel were not to be contacted *ex parte* unless the counsel failed to respond within a reasonable time. *Id.* ¶ 12; Ex E at 4. MHS established that thirty days was a reasonable time. *Id.* Ex. E at 4. The call procedure document contained HIPAA regulations that MHS's employees were required to follow when dealing with medical information. *Id.* ¶ 11; Ex. D. According to the call procedures, MHS's employees could only release an alleged debtor's information to third parties if the debtor executed a written release authorization. *Id.* Ex. D.

In the reference manual, MHS determined, based on case law outside the Seventh Circuit, as the Seventh Circuit had no precedent in the matter, that MHS was obliged to submit an itemized

[1] In the October Order, this Court found that this delay did excuse MHS's contact with Zaborac under 15 U.S.C. § 1692c(a)(2) in light of the statements made by Zaborac's attorney to Crosley on June 27. *See* October Order at 5. This Court will not revisit that finding.

list of the debt in order to be in compliance with the FDCPA. Def. Br. at 6-7; Ex. A. In the October Order, this Court found otherwise and determined that MHS was not required to provide an itemized bill to validate the debt. October Order at 3-5.

Zaborac filed his complaint against MHS on August 19, 2003. MHS filed its answer and affirmative defenses on April 30, 2004. MHS's affirmative defenses included bona fide error. Answer at 4. Discovery ended on July 28, 2004,[2] and on September 22, briefing for Zaborac's first motion for summary judgment was completed.

In the October Order, this Court agreed with Zaborac that MHS had violated Section 1692c(a)(2) of the FDCPA by sending Zaborac a letter directly rather than through his known counsel. However, the Court found that a genuine question of material fact existed as to whether MHS's FDCPA violation was a bona fide error, pursuant to Section 1692k. As stated in the October Order, "MHS [must be allowed] to prove that its violation of the FDCPA was unintentional and that it 'maintained procedures reasonably adapted to avoid' the mistake.'" October Order at 6 (quoting 15 U.S.C. § 1692k(c)).

---

[2]In its briefs on the current motion for summary judgment, MHS introduces new evidence from Mr. John Campbell ("Campbell"), Chief Operating Officer of MHS, who previously had been unidentified to Zaborac except for the appearance of his name on MHS's November 22, 2004, witness list. Zaborac moves to strike this affidavit pursuant to Federal Rule of Civil Procedure 37(c)(1). Pl. Reply at 4. MHS admits that Campbell's affidavit is in support of the pleaded defense of bona fide error. Def. Br. at 3-4. This Court is not convinced that this defense became relevant only after the October Order. Therefore, Campbell's testimony and the facts therein ought to have been brought to Zaborac's attention during discovery. FED. R. CIV. PRO. 26(a)(1)(A). As this affidavit is now substantially relied upon by MHS, this Court is not convinced that MHS's failure to disclose this information was harmless. Therefore, Zaborac's motion to strike is **GRANTED**. Because MHS admits that it cannot win its cross motion for summary judgment without this evidence, Def. Reply at 4, as MHS is now in no different a position as it was in at the time of the October Order, MHS's summary judgment motion is **DENIED**.

Subsequent to the October Order, Zaborac waived his request for a jury trial and dropped the remaining claims against MHS. He then filed this renewed motion for summary judgment on the remaining issue of whether MHS has or had established a genuine question of material fact on the issue of the bona fide error defense.

## II. SUMMARY JUDGMENT STANDARDS

As stated by the Supreme Court, summary judgment is not a "disfavored procedural shortcut, but rather [is] an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996). Further, the nonmovant will not defeat summary judgment merely by pointing to self-serving allegations without evidentiary support. *See Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994).

## III. DISCUSSION

Zaborac first argues that this Court erred in the October Order by allowing MHS to prove that it could meet the bona fide error requirements after the motion for summary judgment, rather than deciding the issue on summary judgment. *See* Pl. Br. at 2 (quoting *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1111 (7th Cir. 2004)). Zaborac then argues that MHS remains unable to meet the evidentiary burdens placed on it by Zaborac's current motion. As MHS is at the same evidentiary level that it was at the time of the October Order, this Court will reanalyze whether MHS can meet its burden to establish a genuine question of material fact as to either its intent to violate the FDCPA or the reasonableness of the procedures it adapted to avoid violating the FDCPA. *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995-96 (7th Cir. 2003).

In the October Order, this Court found that although the Seventh Circuit has not explicitly held that a mistake of law can be a bona fide error within the FDCPA, the Seventh Circuit has assumed as much in nondispositive situations. October Order at 6 (citing *Nielson v. Dickerson*, 307 F.3d 623, 640-41 (7th Cir. 2002); *Jenkins v. Heintz*, 124 F.3d 824, 832 n.7 (7th Cir. 1997)). As such, this Court allowed a mistake of law to be a bona fide error here. October Order at 6. While Zaborac objects to this reading of the case law, Pl. Reply at 5-6, this Court will not revisit that finding. This Court's previous decision in *Bawa v. Bowman, Heintz, Boscia & Vician*, 2001 WL 618966, is not to the contrary. The defendants in *Bawa* were mistaken in their interpretation of the FDCPA only, and not in a supposed conflicts of law analysis.

**A. WHETHER MHS MAINTAINED REASONABLE PROCEDURES TO AVOID FDCPA VIOLATIONS**

MHS cites three principal procedures it maintained to avoid FDCPA violations: employee testing, call procedures, and an in-house reference manual. *See* Cross Aff. Exs. D, E; Def. Br. Ex. A. Zaborac argues that these procedures were unreasonable because none of them were created after consultations with an attorney or other professional, especially in light of MHS's belief of conflicting legal standards. Pl. Br. at 3. However, this Court cannot say that, as a matter of law, the procedures are unreasonable simply because MHS made a legitimate business decision to not seek legal advice.

Zaborac also argues that any procedures MHS has in place are unreasonable in light of MHS's repeated FDCPA violations. Pl. Reply at 8-9. As evidence, Zaborac cites two cases in which his counsel's known representation of consumers in bankruptcy was allegedly ignored by MHS. *Roudebush v. Mut. Hosp. Servs., Inc.*, No. 1:03-cv-1429 (S.D. Ind. 2003); *Owen v. Mut. Hosp. Servs., Inc.*, No. 1:03-cv-1430 (S.D. Ind. 2003). Zaborac also cites a recently settled, albeit identical, matter between his wife and MHS, which is cited due to the alleged post-settlement FDCPA violations of MHS. Pl. Reply at 8-9. This continued alleged *ex parte* communication has resulted in another lawsuit against MHS by Mrs. Zaborac. *Bonnie Zaborac v. Mut. Hosp. Servs., Inc.*, No. 1:05-cv-0219 (S.D. Ind. 2005). However, none of these cases has resulted in a finding of liability against MHS. As such, this Court finds them unpersuasive.

MHS has presented sufficient evidence that it maintained procedures to avoid FDCPA violations. Whether these procedures were reasonable is a genuine question of material fact that precludes summary judgment.

### B. WHETHER MHS'S FDCPA VIOLATION WAS INTENTIONAL

Separate from the possible existence of reasonable procedures to prevent FDCPA violations is the question of whether the FDCPA violation was intentional. *See Turner*, 330 F.3d at 995-96. According to Section 1692k(c), a debt collector is not liable under the FDCPA if the debt collector can show that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

As noted above, this Court has found that mistakes of law may be bona fide error. MHS argues that it misinterpreted its legal obligations under the FDCPA when Zaborac's counsel contacted MHS and requested validation of the debt. MHS argues it believed that, in order to validate the debt, it was required by the FDCPA to provide Zaborac with detailed information; however, as the information relating to the alleged debt stemmed from medical information, MHS believed that it was required by HIPAA to disclose that information only to Zaborac himself, unless his counsel provided written authorization to the contrary. *See, e.g.,* Cross Aff. Ex. D. As such, MHS sent the information directly to Zaborac more than thirty days after Zaborac's counsel stated that no authorization would be provided. *See* Compl. Ex. C. As evidence of its mistake of law—and, so it seems, its lack of intent—MHS shows that it maintained call procedures related to both HIPAA and the FDCPA *See* Cross Aff. Exs. D, E. The call procedures handout specifically notes that "HIPAA overrides FDCPA in needing authorization to disclose." Cross Aff. Ex. D at 2.

Zaborac claims that MHS's procedures are not evidence of a lack of intent because they only target avoiding violations of the FDCPA and not violations of both HIPAA and the FDCPA. Pl. Br. at 2-3. This argument, however, is directly refuted by MHS's call procedures. *See* Cross Aff. Ex. D. Zaborac further asserts that, even if HIPAA does supercede the FDCPA regarding disclosures,

MHS would have to provide a valid reason why it thought this to establish a genuine question of material fact that it lacked intent. *Id.* at 2. However, Zaborac's argument is misplaced. The question at this stage is not how MHS came to believe that HIPAA took precedence over the FDCPA, but whether MHS intentionally violated the FDCPA. That MHS may have believed the FDCPA rules regarding *ex parte* contact were superceded by HIPAA's authorization requirements raises a genuine question of material fact as to whether MHS, in deciding to send the August 4th letter, intended to violate the FDCPA. This Court cannot say as a matter of law that MHS intended to violate the FDCPA.

## IV. CONCLUSION

For the reasons stated herein, this Court **DENIES** Zaborac's and MHS's Cross Motions for Summary Judgment. The October Order is affirmed.

IT IS SO ORDERED this 19th day of July, 2005.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
GOMOLINSKI & PHILIPPS LTD
davephilipps@aol.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com